# Holden, Appellant, v. Bernstein Manufacturing Company.

*Equity—Jurisdiction—Accounting—Patent royalties—Multiplicity of suits.*

1. Jurisdiction in equity is properly invoked by a plaintiff seeking for an accounting for royalties claimed under the terms of an article of agreement, upon sales of certain articles manufactured by the defendants, under the specifications of certain letters patent granted to plaintiff and afterwards assigned by him to the defendant, there being involved four different patents, each containing several claims.

2. In such a case, equity, having taken jurisdiction of the accounting for royalties, will, in order to avoid multiplicity of suits, proceed with the settlement of other points in controversy between the parties, such as the amount of salary and the amount of commissions due one of the parties under the terms of a contract.

3. Where a court of equity properly takes jurisdiction of one of the subjects of a contest, it will dispose of the whole matter in controversy between the parties and thus avoid a multiplicity of suits.

Argued March 23, 1911. Appeal, No. 9, Jan. T., 1911, by plaintiff, from decree of C. P. No. 5, Phila Co., Sept. T., 1910, No. 994, dismissing bill in equity in case of George Holden v. Bernstein Manufacturing Company. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for discovery and account.

The plaintiff's bill was as follows:

1. That your orator, upon June 21, 1907, entered into a written contract with the Bernstein Manufacturing Company, a corporation, defendant, whereby said defendant corporation engaged your orator as superintendent in defendant's factory upon the terms therein stated. Said written contract was duly executed by your orator and defendant, and is as follows:

"June the twenty first, 1907.
"Mr. GEORGE HOLDEN,
"Dear Sir: We, the undersigned do hereby agree to

engage your services as Superintendent of Construction with the view of lessening the cost of manufacture, and at the same time retain the present high standard of quality of our product and to improve upon any methods of construction that are at present not of the most approved modern practice.

"You shall have full control of the force of mechanics and laborers. It is understood that you will give your undivided attention to our business and always work to the interest of the Company. Any letters patent that may be granted for inventions by you, are to be issued in your name and assigned to the Bernstein Mfg. Company.

"For all of which we will pay you an annual salary of $3,500, Thirty-five Hundred Dollars, payable in monthly installments, and we further agree to pay you Two per cent (2%) on the amount of sales for any new business you may develop in the manufacture of Lockers, shop and office Fixtures; your services to begin August First, 1907, and to continue for Three (3) years. Each to give the other two (2) months' notice prior to August First, 1910, of any intention of terminating this agreement, otherwise to continue in force from year to year thereafter. If this agreement is terminated at its expiration then we will agree to pay you one per cent (1%) for all goods of your invention that shall be manufactured by us for the full term of such patents.

> "Bernstein Mfg. Co.
> "Wm. F. Bernstein,
> "President.
> "Accepted   Geo. Holden."

2. That your orator duly performed all his duties under the aforesaid contract with defendant.

That in pursuance of said contract your orator invented a certain new and useful improvement in end rails for bed spring, which he duly secured by letters patent of the United States, No. 889,007, which he assigned to defendant; and a certain new and useful improvement in cots

or bedsteads, which he duly secured by letters patent as aforesaid, No. 919,865, which he assigned to defendant; and a certain new and useful improvement in utensil sterilizers, which he duly secured by letters patent as aforesaid, No. 929,307, which he assigned to defendant; and a certain new and useful improvement in metallic cabinets, which he duly secured by letters patent as aforesaid, No. 943,350, which he assigned to defendant.

3. That defendant did not permit your orator to have full control of the force of mechanics and laborers of defendant during the time of his employment, but the officers of defendant gave orders directly to employees properly under your orator's control.

That your orator did develop new business in the manufacture of lockers, shop and office fixtures, during the period the aforesaid contract with defendant was in force, and the defendant has made sales of said lockers, shop and office fixtures.

That since the expiration of said written contract defendant has manufactured and sold goods of the invention of your orator.

That said defendant has retained and still does retain the possession and ownership of the patents assigned to it by your orator, as aforesaid.

That upon May 27, 1910, your orator notified defendant of his intention to terminate his services as superintendent, under the aforesaid written contract, upon the last working day of its term, viz., July 30, 1910, in accordance with the provisions of said agreement; and thereafter, on June 21, 1910, the defendant refused to permit your orator to continue his services as superintendent, and excluded him from their factory although your orator was ready and willing to, and did offer to do and perform his work as superintendent, as required by said contract. That defendant has not paid your orator the portion of his salary provided for in said contract, at the rate of $3,500 per annum, for the period from June 20, 1910, to July 30, 1910.

4. That your orator does not know and is unable to ascertain, except from said defendant, the amount of sales of lockers, shop and office fixtures, and goods of your orator's invention sold by the defendant, and your orator has demanded of defendant an accounting for sales of lockers, shop and office fixtures, and for sales of goods of his invention, and for payment of the sums respectively due on such sales, and for payment of his salary due as aforesaid from June 20, 1910, to July 30, 1910, as agreed to be paid according to said written contract, but the said defendant has neglected and refused and still does neglect and refuse to render your orator the accounts and make the payments as aforesaid.

5. Wherefore your orator needs equitable relief, and prays that it may be ordered by your honorable court that,

a. Said defendant may make discovery to your orator of all sales of lockers, shop and office fixtures sold by them.

b. Said defendant may make discovery to your orator of all sales of goods of his invention since July 31, 1910.

c. Said defendant make a full and complete accounting to your orator of all lockers, shop and office fixtures sold by them, and of all goods of his invention sold by them since July 31, 1910.

d. Said defendant pay to your orator his salary from June 20, 1910, to July 30, 1910, at the rate of $3,500 per annum, and two per cent on all sales of lockers, shop and office fixtures sold by them, and one per cent on all sales of goods of your orator's invention since July 31, 1910.

e. Your orator have such other and further relief, as to your honors may seem meet, in the premises.

Defendant's demurrer to the bill was sustained and the bill dismissed.

*Error assigned* was the decree of the court.

*Paul Reilly*, with him *T. Truxton Hare* and *Henry B. Hodge*, for appellant.—The appellant's remedy was prop-

erly in equity: Holland v. Hallahan, 211 Pa. 223; Adams's App., 113 Pa. 449.

*Paul C. Hamlin*, with him *Julius C. Levi*, for appellee, cited: Owens v. Goldie, 213 Pa. 579; Shenango Furnace Co. v. Fairfield Twp., 229 Pa. 357; Murdock v. Martin, 132 Pa. 86.

OPINION BY MR. JUSTICE POTTER, July 6, 1911:

It appears from the record here, that the court below sustained a demurrer to the plaintiff's bill. The reason is not given, but presumably it was because it was thought there was an adequate remedy at law. If this was the reason, we cannot agree that it is good in this case. The plaintiff sought for an accounting for royalties claimed under the terms of an article of agreement, upon sales of certain articles manufactured by the defendant, under the specifications of certain letters patent of the United States granted to plaintiff and afterwards assigned by him to the defendant. The character of the accounting required, in order to give to the plaintiff the relief to which he is entitled, is such as to place it beyond the fair reach of a jury. The inventions for the use of which an accounting is sought, pertain to improvements in parts of articles, as for instance in end rails for bed springs, and to other devices in which the inventions were set forth in various written claims. Four different patents seem to be involved, and it is suggested that one of these patents has six claims; another patent has five claims, and another contains three claims. An accounting for royalties upon articles manufactured under some one or more of these various claims would involve an examination of the various articles manufactured, and a comparison of their structure with the elements of the inventions set forth in the claims of the various patents, and it would require also the fixing of the proportionate value of the parts of the articles included within the scope of the claims, to the value of the whole article. These processes would be far

too complicated to be submitted to a jury with any reasonable expectation of an intelligent solving by them of the problems involved. Such work requires the services of a chancellor or of a master in chancery. In Adams's Appeal, 113 Pa. 449, it was held that a bill in equity for an accounting is the proper remedy to recover royalties upon a patented article. It is a familiar doctrine that where a court of equity properly takes jurisdiction of one of the subjects of a contest, it will dispose of the whole matter in controversy between the parties, and thus avoid a multiplicity of suits: Myers v. Bryson, 158 Pa. 246; Gwinn v. Lee, 6 Pa. Superior Ct. 646. This would justify a court of equity, after having taken jurisdiction in this case of the complicated matter of the accounting for royalties, to proceed with the settlement of the other points in controversy between the parties, as to the amount of salary, if any, due to the plaintiff, and as to the amount of the commission due him on sales for any new business developed by him while in the employ of the defendant, in accordance with the terms of the contract.

The judgment of the court below is reversed, the bill is reinstated and the cause is remanded to the court below for further proceedings in accordance with this opinion.