Rinios *v.* Tritsch (et al., Appellant).

Argued October 3, 1949. Before MAXEY, C. J., DREW, LINN, PATTERSON, STEARNE and JONES, JJ.

*John A. Metz, Jr.,* with him *John A. Metz* and *Metz & Metz,* for appellant.

*Harold Smith Haller,* with him *Verner L. Barbor,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 14, 1949:

This appeal is by one of two defendants in an equity proceeding from a decree requiring appellant to release real estate from the lien of a judgment which she had entered against her daughter (the other defendant); to require both defendants to complete the probate of the will of appellant's deceased husband, and for an accounting. The principal question is whether the doctrine of equitable estoppel was correctly applied.

Gust Rinios, the plaintiff, and Anna Tritsch, *one* of the defendants, in the presence of and with the acquiescence of Philomena Tritsch, the other defendant and sole appellant (mother of Anna Tritsch), entered into a written contract on February 27, 1945 for the sale

of premises 217 Electric Avenue, Borough of East Pittsburgh. The consideration was $25,000, $1,000 of which was paid at the execution of the contract, and the balance was to be paid at settlement fixed for June 1, 1945. Title was to be in fee clear of all encumbrances.

The mother and daughter resided together in an extremely close family and financial relation. Early in 1943 the mother and daughter went to the office of a real estate company, and requested the manager to find a buyer for the real estate at $25,000. During the two years thereafter the mother and daughter frequently came to the real estate office inquiring about prospective buyers. The mother was active in this sales effort. In February 1945 the manager secured an offer of $25,000, which he submitted to both defendants, and which was accepted by them. An agreement of sale was prepared and executed by the daughter *in the presence of the mother*.

An examination of title revealed a defect. The will of Alphonse Tritsch (father of the daughter and spouse of appellant) had been lodged in the office of the register of wills and had been proven but not probated. No formal petition has been presented for its probate. The necessity for probate may thus be stated: the daughter acquired title to the real estate by deed from the mother. The mother and her husband theretofore had taken title in their joint names. The wife survived. She assumed that she was the sole owner as surviving tenant by the entirety. The *habendum* of the deed to the husband and wife reads *"as tenants in common and not as joint tenants."* This did not create a tenancy by the entirety (*Blease v. Anderson*, 241 Pa. 198, 88 A. 365) and therefore there was no title by survivorship. They held title as tenants in common. Appellant's husband therefore died seized of an undivided half interest or estate in the real estate. Alphonse Tritsch died testate. Under the terms of his will his estate was devised and

bequeathed to Anna Tritsch, his daughter. Defendants have neglected or refused to file a formal petition for probate.

An offer of tender was made by plaintiff on May 31, 1945 to defendant, Anna Tritsch, and demand made for deed, which was refused on the ground that probate of the will of her father had not been completed. On August 7, 1945, the mother entered judgment against her daughter on a judgment note dated December 10, 1938, and assessed damages in the sum of $63,000. Upon the entry of this judgment both defendants notified the plaintiff that they intended not to abide by the agreement and refused to make the conveyance. The present action was then commenced seeking (1) to compel the daughter (defendant) specifically to perform her contract (2) to require the mother (appellant) to release the premises from the judgment against the daughter (3) to require defendant to complete probate of the will of Alphonse Tritsch and (4) an accounting.

At the trial there was ample testimony to support the findings of the chancellor that the entry of the judgment by the mother was fraudulent. It was for the sole purpose of preventing the sale by the daughter. Appellant's testimony disclosed that the transfer of title from the mother to the daughter, accompanied by the giving of the judgment note, was not a bona fide transaction. According to appellant's own testimony, its purpose was to make it appear that appellant no longer owned the property in order to avoid importunity by her son and his wife. She testified: "I wasn't [on good terms] with my son and I didn't want him to have anything to do with the property. Him and his wife bothered me all the time, and that's why I wanted that note." She also said that her agent told her: ". . . as long as I have that note I have an interest [in the property]; that's why he made that note." The note was never included in any personal property tax return.

While rent statements were rendered and checks given by the agent to the daughter alone, the mother always took an active interest and direction in the management of the property. The daughter testified that at the time of the agreement of sale, she and her mother had not yet determined how the proceeds of sale were to be divided or who was to receive them.

The conclusion is irresistible that appellant still regarded herself as the real owner of the property and that the daughter held title for her use. Having changed her mind regarding the adequacy of the consideration, appellant employed the thinly veiled device of entering the judgment against the daughter to avoid the sale.

We agree with the learned court below that *Suchan et ux. v. Swope et al.*, 357 Pa. 16, 53 A. 2d 116, rules this case. There a brother, who claimed to possess a prior agreement to purchase a small section of a farm, stood by and said nothing, while he saw and heard his brother sell the entire farm to another. In decreeing specific performance against *both* brothers, this Court said, speaking through Mr. Justice HORACE STERN, p. 22:

"Where the circumstances are such as to raise a duty to speak, the failure to do so may well amount to fraud. 'There is no principle better settled, nor one founded on more solid considerations of equity and public utility, than that which declares that if one knowingly, though he does it passively by looking on, suffers another to purchase and spend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person': Carr v. Wallace, 7 Watts 394, 400. This doctrine of equitable estoppel rests upon two classical legal maxims: 'Qui tacet consentire videtur'; 'Qui potest et debet vetare, jubet'. It is a principle which has been enunciated and applied by this court under many varieties of circumstances, as, for example, in Woods v. Wilson, 37 Pa. 379; Chapman

v. Chapman, 59 Pa. 214; Taggart's Appeal, 99 Pa. 627; Logan v. Gardner, 136 Pa. 588, 20 A. 625; Wahl v. Pittsburgh & Western Rwy., 158 Pa. 257, 27 A. 965; Marshal v. Foltz, 221 Pa. 570, 70 A. 857. (See the elaborate annotation on 'Estoppel of one not a party to a transaction involving real property by failure to disclose his interest in the property' in 50 A. L. R. 668)."

In the present case, however, appellant *did* claim an interest in the property. She actively participated in the negotiations for the sale. She remained silent when her daughter executed the written contract of sale in her presence. Appellant is equitably estopped from asserting her so-called rights against the purchaser.

The learned court below was also correct in decreeing that appellant release the land from the operation of the judgment. It is axiomatic that the court, having assumed equity jurisdiction and decreed specific performance, retained jurisdiction for the purpose of administering *complete* relief and doing *entire* justice. It therefore correctly ordered the defendants to present a petition to the register of wills for the probate of the will of appellant's husband, Alphonse Tritsch, in order thus to enable the probated will to constitute a necessary muniment of title. The court also properly decreed that defendants render an appropriate accounting of rents and profits.

The decree is affirmed at the cost of appellant.